8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   KAI WALTER WILLIAMS,                    )   Case No.: 1:18-cv-01362-AWI-JLT (HC)
                                             )
12              Petitioner,                  )   FINDINGS AND RECOMMENDATION TO
                                             )   DENY PETITION FOR WRIT OF HABEAS
13         v.                                )   CORPUS
                                             )
14   RALPH DIAZ, Acting Secretary,           )   [TWENTY-ONE DAY OBJECTION DEADLINE]
                                             )
15              Respondent.                  )
                                             )
16   _____)

17          Petitioner is currently in state prison serving a sentence of 59 years and 4 months for his

18   conviction for two counts of assaulting a peace officer with a firearm, being a felon in possession of a

19   firearm, and carrying a loaded firearm as an active gang participant. He filed the instant habeas

20   petition challenging the conviction. As discussed below, the Court finds the claims to be without merit

21   and recommends the petition be **DENIED**.

22   **I.      PROCEDURAL HISTORY**

23          On June 13, 2014, a Kern County jury found Petitioner guilty of assaulting a peace officer with

24   a firearm in counts 3 and 4 (Cal. Penal Code § 245, subd. (d)(1)); being a felon in possession of a

25   firearm in count 5 (Cal. Penal Code § 29800, subd. (a)(1)); and carrying a loaded firearm as an active

26   gang participant in count 7 (Cal. Penal Code § 25850, subd. (c)(3)). People v. Williams, 2016 Cal.

27   App. Unpub. LEXIS 7040, at *2 (Cal. Ct. App. Sept. 23, 2016).

28          The Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth

DCA"). On September 23, 2016, the Fifth DCA affirmed the judgment. Id. Petitioner filed a petition for review in the California Supreme Court, and the petition was denied on December 14, 2016. (LD 29-17, 29-18.[1])

On October 2, 2018, Petitioner filed a petition for writ of habeas corpus in the Central District of California. (Doc. 1.) On October 3, 2018, the case was transferred to this Court. (Docs. 3, 4.) On December 18, 2018, Respondent filed a motion to dismiss contending that the petition violates the statute of limitations. (Doc. 15.) Petitioner filed an opposition to the motion on January 2, 2019. (Doc. 19.) Respondent did not file a reply to the opposition. On January 22, 2019, the Court issued findings and recommendations to deny Respondent's motion to dismiss and directing Respondent to file a response to the petition, which was adopted on April 2, 2019 (Docs. 20, 21.) Respondent filed its answer on June 27, 2019. (Doc. 28.) Petitioner filed a traverse on July 8, 2019. (Doc. 30.)

## II.    FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

### *The People's case*

#### *The shooting*

On March 9, 2014, around 2:00 a.m., Bakersfield Police Officers Charles Wright and Robert Pair were in their patrol car, with Officer Wright driving; they had been parked for some time near the Elks Lodge. The Elks Lodge, a bar located in the territory of the Eastside Crips, was a popular hangout for members of that gang. The officers were there to investigate a white 1979 Pontiac Firebird that had been reported stolen and was parked by the Elks Lodge. At closing time, Previs Davis and Duwayne Payton left the Elks Lodge, got into the Firebird, and drove away. Officer Wright pulled out and caught up with the Firebird and activated his patrol car's overhead lights and siren so as to pull the Firebird over. The Firebird made a right turn onto another street and Officer Wright followed. Upon making the turn, Officer Wright, whose driver's side window was down, heard two gunshots.

Delicia Smith had spent the evening at the Elks Lodge. Smith left the club when it closed at 2:00 a.m. and walked down the street with her friend Jamie Wandick. Smith received a phone call from Williams, who had been with her at the Elks Lodge and was trying to score a date with her. Williams then ran up to join Smith and Wandick. As the three of them walked, Smith saw a white car go by with a police patrol car in pursuit. Smith

---
[1] "LD" refers to the documents lodged by Respondent.
[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

heard two gunshots when the patrol car passed by. She saw Williams standing in the middle of the street, his right arm outstretched in the direction of the passing patrol car.

Officer Claude Brooks took a statement from Smith about 20 minutes after the shots were fired. A recording of that statement was played for the jury. In the statement, Smith said she was walking with Williams when they saw the patrol car pursuing another car. Williams said, "[F]uck the police," jumped into the middle of the street, and proceeded to fire shots at the police vehicle.

Wandick testified he left the Elks Lodge at about 2:00 a.m. that night and walked down the street with Smith and Williams. As they walked, Wandick saw a police patrol car with its lights activated pursuing another vehicle. As the patrol car passed, Wandick heard four gunshots. Wandick did not see Williams run into the street or fire at the patrol car. Wandick admitted to being a member of the Eastside Crips.

Officers Keegan Gavin and Manuel Ornelas were also parked near the Elks Lodge that night as part of the investigation into the stolen 1979 Pontiac Firebird. Gavin saw two people get into the Firebird and drive away. He tracked the Firebird from a relative distance and saw that another patrol car was closely pursuing the Firebird. As Gavin turned a corner to follow the two cars, he saw Williams standing in the middle of the road, his right arm outstretched, holding a gun. Gavin stopped his patrol car, got out, and took Williams into custody after a brief foot pursuit down a residential street. He found the gun that Williams had been holding in a neighboring front yard. The gun was found to contain four spent shell casings.

Officer Manual Ornelas testified he was riding in Gavin's patrol car as his partner that night. Ornelas saw another patrol car pursuing the stolen Firebird and heard four gunshots. When Gavin stopped their patrol car after making a right turn behind the other two cars, Ornelas saw Smith, Wandick, and Williams standing along the east curb line. Gavin ordered the three of them to get on the ground. Williams ran away but Gavin pursued him while Ornelas detained the other two.

Although the officers who were attempting to pull the white Firebird over had determined the car "was not stopping" and had radioed that they "had a failure to yield," the white Firebird eventually pulled over further down the same street that Smith, Wandick, and Williams had been walking along.

The following day, Detective Josh Finney searched the area for expended bullets and bullet strikes. He was unable to find any expended bullets but identified a possible bullet strike on a tree trunk about 12 to 16 inches above ground level.

*Gang evidence*

Several officers testified about street checks and offense reports relevant to the gang-related charges and enhancements against Williams. Officer Michael Malley testified for the People as an expert on the Eastside Crips gang.

During street checks dated February 22, 2008, August 22, 2010, and September 15, 2012, Williams admitted to officers that he was a member of the Eastside Crips. Williams was also ordered to register as a gang member from approximately 2010 to 2015, upon his conviction in a prior case for carrying a loaded firearm as an active gang participant. Williams had multiple tattoos indicating he was an active member of the Eastside Crips, including the letters ESC (for Eastside Crips) behind his left ear, the letters WSK (for Westside Killer) on his right forearm, the letters CBK (for Country Boy Killer) also on one of his forearms, and numerous other tattoos. Based on street checks, offense reports, tattoos he observed on Williams, and Williams's gang registration, Malley opined that Williams was an "active member of the Eastside Crips."

In addition, with reference to relevant street checks, offense reports, tattoos, field identification cards, and self-admissions, Malley opined that Jamie Wandick, Duwayne Payton, and Previs Davis were also active members of the Eastside Crips at the time of the incident underlying this case. There was evidence that Payton, Davis, and Williams knew one another. On January 15, 2014, Officer John Otterness was dispatched to check on complaints regarding a party; he encountered Davis, Payton, and Williams seated in a vehicle outside the party venue. During a street check on January 25, 2014, Officer Ryan Vaughan encountered Payton and Williams conversing together in the parking lot of the Elks Lodge.

Officer Malley testified that the primary activities of the Eastside Crips included shootings, firearms possession, narcotics sales, murder, burglary, robbery, and carjacking. Malley also testified that the Eastside Crips were engaged in an ongoing pattern of criminal activity. He discussed four specific crimes committed by Eastside Crips members. First, he described the circumstances of Eastside Crip David Colen's conviction for "felon in possession of a firearm [and] gang participation." Next he described the facts of the murder and gang-participation convictions of Lawrence Slaughter, Christopher Patterson, and Maxamillion McDonald, all of whom were documented members of the Eastside Crips. He also addressed an incident in which Wandick and James Spencer were found in a vehicle with a loaded .380-caliber handgun lying in plain view, resulting in a gang-related conviction for Wandick. Finally, he discussed an incident where Williams was contacted while sitting in a vehicle; a loaded, stolen handgun was visible in plain view inside the vehicle; Williams was convicted of being a gang member in possession of a firearm and was required to register as a gang member.

Malley also addressed Williams's actions in the instant case. In response to a hypothetical question based on the facts of the case, Malley opined that Williams had acted for the benefit of and in association with the Eastside Crips.

### The defense case

Anthony Paul testified as a firearms expert for the defense. He described the weapon that Williams had fired as "a revolver. It's manufactured by Smith & Wesson Company. The caliber is .38. Smith & Wesson Special is the correct name for the caliber." Counsel asked Paul, with reference to a map showing the locations of the shooter and of the tree

on which Detective Finney identified a potential strike, whether such a shot was possible. Paul explained, "[s]o if you wanted to make that shot, then you would have to—you could not fire that weapon or that revolver in a straight line parallel with the ground. That would have to be elevated considerably, at least about 25 or 30 degrees, to get that kind of distance from a .38 Special out of two-inch barrel revolver." Paul also stated that he would expect to find the bullet lodged in the tree if the mark had been caused by a bullet strike.

The parties stipulated that Williams had a previous felony conviction.

Williams, 2016 Cal. App. Unpub. LEXIS 7040, at *3-10.

## III.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

5

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had

"a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

## C.    Review of Petition

Petitioner raises three claims in his petition: (1) He challenges the disclosure to the gang expert and admission into evidence of Bakersfield Police Department records documenting his juvenile police contacts; (2) He argues that including the term "kill zone" in the attempted murder instruction given by the trial court is inflammatory and argumentative; and (3) He challenges the sufficiency of the evidence with respect to various elements of both the gang participation offense and the gang related sentencing enhancements.

### 1.    Petitioner's juvenile records from Bakersfield Police Department

Petitioner challenges the disclosure to the gang expert and admission into evidence of Bakersfield Police Department records documenting his juvenile police contacts. Petitioner raised this claim on direct appeal. In the last reasoned decision, the Fifth DCA denied the claim as follows:

> Williams generally challenges the disclosure to the gang expert and admission into evidence of Bakersfield Police Department records documenting his juvenile police contacts. He fails to identify the records at issue or to specify their contents. He does not even state how many juvenile records were improperly disclosed and admitted into evidence. He also does not address the extent to which the records were necessary, if at all, for the People to prove the elements of the charged offenses.

> The record indicates that Williams was born in 1991. A review of the record with this information in mind suggests that evidence relating to three or four records documenting Williams's juvenile police contacts was presented to the jury. First, evidence related to one or possibly two street checks from 2008, when Williams was a juvenile, was presented to the jury. Officers Finney and Malley addressed street check No. SC08-1183, which revealed that Williams admitted he was a member of the Eastside Crips during a February 22, 2008, contact with Officer Finney; Officer Malley also testified about street check No. 08-2950, noting that it recorded a contact with Williams and other Eastside Crips at the Elks Lodge. Second, Officer Malley testified about a field identification card from 2008, which indicated that Williams had admitted he was an Eastside Crip. Finally, Officer Malley discussed an offense report from 2008, No. 2008-163347, which documented a police contact with Williams at the Aneese Market, a popular Eastside Crip hangout within the gang's territory. Williams, who was with another gang member, was found in possession of rock cocaine during this contact (the jury was advised that the incident did not result in a sustained juvenile petition).

The prosecutor obtained these juvenile records directly from the police department for use in the instant trial without petitioning the juvenile court pursuant to Welfare and Institutions Code section 827 to release the records for such use. Williams argues that the prosecutor was required to obtain a juvenile court order permitting the dissemination of these records to the People's gang expert and at trial. We need not decide whether the prosecutor was required to petition the juvenile court in order to present evidence regarding Williams's juvenile police contacts. Even were we to assume that the records were improperly admitted here, the error was harmless as these records were merely cumulative of other evidence that was properly before the jury.

Apart from the challenged juvenile records, a number of officers collectively testified about eight other street checks and five other offense reports. These street checks and offense reports documented Williams's police contacts as an adult and independently established that Williams was an active member of the Eastside Crips. For example, street check Nos. 2010-609 and 2010-5793 revealed that Williams admitted he was a member of the Eastside Crips in each of these contacts. Similarly, street check No. 2010-6026 revealed that Williams was contacted within Eastside Crip territory, admitted he was a member of the gang, and displayed a number of tattoos identifying him as a member of the gang. Street check No. 2012-5420 memorialized a contact within Eastside Crips territory in which Williams also admitted he was an active Eastside Crips member. Street check No. SC2014-409 documented a contact in which Williams was found within Eastside Crips territory with Payton, a known member of that gang. Similarly, street check No. 2014-610 indicates that Williams and Payton were contacted at the Elks Lodge, a known Eastside Crips hangout. Next, street check No. 2014-304 memorialized an incident in which Williams was contacted with Payton, again, and Davis, who was also a known member of the Eastside Crips. Finally, street check No. 2009-5973 revealed that Williams was contacted within Eastside Crip territory with three other documented members of that gang, admitted he was an Eastside Crip, and displayed gang tattoos. Evidence of Williams's offense reports as an adult similarly indicated that Williams was contacted on numerous occasions with other known gang members within the bounds of gang territory.

Officer Malley also testified that Williams was ordered by the superior court to register as a gang member from approximately 2010 to 2015, upon his conviction in a prior case for carrying a loaded firearm as an active gang participant. He further testified that Williams had multiple tattoos indicating he was an active member of the Eastside Crips, including the letters ESC (for Eastside Crips) behind his left ear, the letters WSK (for Westside Killer) on his right forearm, the letters CBK (for Country Boy Killer) also on one of his forearms, and numerous other tattoos.

It is thus abundantly clear that any evidence contained in the challenged records relevant to the charged gang-participation crime and/or the gang-related enhancement allegations was cumulative of other, more probative evidence in the record. Accordingly, Williams has not shown he was prejudiced by admission of the challenged juvenile records. (People v. Houston (2005) 130 Cal.App.4th 279, 296, 29 Cal. Rptr. 3d 818 [admission of cumulative evidence can reasonably be harmless].)

   *a.*   *Legal Standard and Analysis*

   This claim is not cognizable on federal habeas review because the admissibility of evidence is a matter of state law. _Estelle v. McGuire_, 502 U.S. 62, 67-68 (1991) (state evidentiary ruling cannot provide ground for federal habeas relief unless the admission of evidence violated due process). In _Holley v. Yarborough_, the Ninth Circuit stated:

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. _Musladin_, 549 U.S. at 77, 127 S.Ct. 649.
>
> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, _see_ _Williams_, 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." _Musladin_, 549 U.S. at 77, 127 S.Ct. 649. Under the strict standards of AEDPA, we are therefore without power to issue the writ . . . .

_Holley v. Yarborough_, 568 F.3d 1091, 1101 (9th Cir. 2009); _see_ _Moses v. Payne_, 555 F.3d 742, 760 (9th Cir. 2008) (holding that trial court did not abuse its discretion in excluding expert testimony "[b]ecause the Supreme Court's precedents do not establish a principle for evaluating discretionary decisions to exclude the kind of evidence at issue here"); _see also_ _Brown v. Horell_, 644 F.3d 969, 983 (9th Cir. 2011) ("Between the issuance of _Moses_ and the present, the Supreme Court has not decided any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete defense or 'establish[ing] a controlling legal standard' for evaluating such conclusions. _Brown_, therefore, cannot – as the petitioner in _Moses_ could not – show that the state appellate court's ruling was either contrary to or an unreasonable application of clearly established Supreme Court precedent."). Since there is no clearly established Supreme Court precedent governing a trial court's discretionary decision to admit evidence as a violation of due process, habeas relief is foreclosed. _Id._

   Even if the Court were to consider the claim, Petitioner would not be entitled to relief. The challenged juvenile records included evidence documenting Petitioner's juvenile police contacts which

revealed that Petitioner had admitted he was a member of the Eastside Crips. However, apart from the challenged juvenile records, the evidence independently established that Petitioner was an active member of the Eastside Crips. For example, the testimony of a number of officers regarding street checks and offense reports documenting Petitioner's police contacts as an adult identified Petitioner as an active member of the Eastside Crips. Evidence of Petitioner's offense reports as an adult similarly indicated that Petitioner was contacted on numerous occasions with other known gang members within the bounds of gang territory. Officer Malley also testified that Petitioner was ordered by the superior court to register as a gang member from approximately 2010 to 2015, and further testified that Petitioner had multiple tattoos indicating he was an active member of the Eastside Crips. The Fifth DCA correctly concluded that any evidence contained in the challenged records was cumulative of other more probative evidence in the record. Therefore, Petitioner cannot demonstrate prejudice. The claim should be rejected.

### 2.    Attempted murder instruction

Petitioner argues that including the term "kill zone" in the attempted murder instruction given by the trial court is inflammatory and argumentative. Petitioner raised this claim on direct appeal. In the last reasoned decision, the Fifth DCA denied the claim as follows:

> Williams next challenges the attempted-murder instruction given by the trial court. Specifically, he argues it was reversible error to give the instruction because the term "kill zone" included in the instruction is inflammatory and argumentative. The People respond that Williams cannot show he was prejudiced by the attempted-murder instruction because he was not convicted on either of the charged counts of attempted murder. The People further contend that, to the extent Williams argues the term "kill zone" in CALCRIM No. 600 is inflammatory and hence its use violated his due process rights and prejudiced his case in general, his argument also fails because courts have found the term is neither inflammatory nor argumentative. We agree with the People and reject Williams's claims of instructional error.

> Defense counsel unsuccessfully objected to the inclusion of the term "kill zone" in the attempted-murder instruction during the jury instruction conference. The court instructed the jury on attempted murder, in relevant part, as follows:

> "A person may intend to kill a specific victim or victims and at the same time intend to kill everyone in a particular zone of harm or 'kill zone.' In order to convict the defendant of the attempted murder of Pair, the People must prove that the defendant not only intended to kill Wright but also either intended to kill Pair, or intended to kill everyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill Pair or intended to kill Wright by killing everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of Pair."

> The jury was unable to reach verdicts on the attempted-murder charges in counts 1 and

2 and the trial court declared a mistrial on those counts. The prosecutor ultimately dismissed the attempted-murder charges.

Since Williams was not convicted of attempted murder on either of the charged counts, he cannot show he was prejudiced by the attempted-murder instruction. To the extent he argues the language of the instruction was "improperly inflammatory and unnecessary" such that its inclusion in the attempted-murder instruction rendered his entire trial fundamentally unfair, his argument is foreclosed by People v. Campos (2007) 156 Cal.App.4th 1228, 1244, 67 Cal. Rptr. 3d 904 (rejecting argument that term "kill zone" is improperly inflammatory and argumentative).

Williams, 2016 Cal. App. Unpub. LEXIS 7040, at *16-18.

     *a.*     *Legal Standard and Analysis*

The issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 68 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").

Respondent correctly argues that Petitioner fails to present a federal claim, since Petitioner is challenging the application and interpretation of state law. The state court determined that the trial court's attempted murder instruction was not improperly inflammatory and unnecessary. Since the state court determined that the challenged instruction was not improper, Petitioner's challenge does not give rise to a federal question cognizable on federal habeas review. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Thus, the claim is not cognizable on federal habeas and should be rejected.

Even if the Court finds the claim cognizable, it is without merit. A habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." Id. (citation omitted); see Calderon v. Coleman,

525 U.S. 141, 146-47 (1998). Petitioner takes issue with the inclusion of the term "kill zone" in the attempted-murder instruction, however, since Petitioner was not convicted of attempted murder on either of the charged counts, he cannot show he was prejudiced by the attempted-murder instruction. Additionally, this Court has previously rejected the claim that the inclusion of the phrase "kill zone" in the language of the instruction is inflammatory or prejudicial. See Aleman v. CDCR, 2016 U.S. Dist. LEXIS 76711, at *46-51 (E.D. Cal. June 12, 2016). Accordingly, Petitioner fails to establish that the state court's determination was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Therefore, the claim should be denied.

3.  Sufficiency of the evidence for gang participation conviction and true findings on gang enhancements

Petitioner challenges the sufficiency of the evidence with respect to various elements of both the gang participation offense and the gang related sentencing enhancements. Petitioner raised these claims on direct appeal. In the last reasoned decision, the Fifth DCA denied the claims as follows:

**A. Sufficient evidence supports the concerted-action element of the gang-participation offense**

Williams was convicted, pursuant to section 25850, subdivision (a), of carrying a loaded firearm in public, as charged in count 7. The jury further found he was an active gang participant for purposes of this offense, making it punishable as a felony under section 25850, subdivision (c)(3). He challenges the sufficiency of the evidence as to the concerted-action element incorporated in section 25850, subdivision (c)(3). The People respond that substantial evidence supports the jury's findings as to count 7, including the concerted-action element of section 25850, subdivision (c)(3). We agree with the People that the jury's findings are supported by substantial evidence.

In reviewing a challenge based on sufficiency of the evidence to support a conviction, our consideration is limited to the question whether the conviction is supported by substantial evidence, i.e., evidence which is "'reasonable in nature, credible, and of solid value.'" (People v. Johnson (1980) 26 Cal.3d 557, 576, 162 Cal. Rptr. 431, 606 P.2d 738.) More specifically, "[i]n reviewing the sufficiency of the evidence, we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (People v. Davis (1995) 10 Cal.4th 463, 509, 41 Cal. Rptr. 2d 826, 896 P.2d 119.) We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal. Rptr. 2d 23, 864 P.2d 103.) If the jury's findings are reasonable under a substantial evidence standard, reversal is not warranted, notwithstanding the possibility that the "'circumstances might also reasonably be reconciled with a contrary finding ....'" (People v. Thomas (1992) 2 Cal.4th 489, 514, 7 Cal. Rptr. 2d 199, 828 P.2d 101.)

Section 25850, subdivision (a), provides:

"A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory."

Section 25850, subdivision (c)(3), provides:

"(c) Carrying a loaded firearm in violation of this section is punishable, as follows: [¶] ... [¶]

"(3) Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22 ... as a felony."

In order for section 25850, subdivision (c)(3) to apply, the prosecution must prove the elements of the gang-participation offense set forth in section 186.22, subdivision (a). (People v. Robles (2000) 23 Cal.4th 1106, 1115, 99 Cal. Rptr. 2d 120, 5 P.3d 176 [analyzing § 12031, renumbered as § 25850].) [FN 9.] Section 186.22, subdivision (a), provides that "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment ...." The elements of the gang-participation offense delineated by section 186.22, subdivision (a), are: "First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (People v. Rodriguez (2012) 55 Cal.4th 1125, 1130, 150 Cal. Rptr. 3d 533, 290 P.3d 1143 (Rodriguez).)

> [FN 9.] Former section 12031, subdivision (a)(1), is now section 25850, subdivision (a). Former section 12031, subdivision (a)(2), is continued as section 25850, subdivision (c). (Added by Stats. 2010, ch. 711, § 6, eff. Jan. 1, 2011, operative Jan. 1, 2012.)

Williams's "sufficiency of the evidence" contention goes to the third element, namely the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of the relevant gang. To satisfy this element, a defendant must willfully advance, encourage, contribute to, or *help members of his gang* commit *any felonious criminal conduct* (not necessarily gang-related felonious conduct). (People v. Johnson (2014) 229 Cal.App.4th 910, 920, 176 Cal. Rptr. 3d 917.) In addition, section 186.22, subdivision (a), "requires that [the] felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (Rodriguez, *supra*, 55 Cal.4th at p. 1132.) "One may promote, further, or assist in the felonious conduct by at least two gang members by either (1) directly perpetrating the felony with gang members or (2) aiding and abetting gang members in the commission of the felony." (Johnson, *supra*, at pp. 920-921.)

Williams argues "[t]here is no evidence that [he] acted other than alone when he allegedly fired a gun in the middle of the street in the middle of the night," and, consequently, the evidence is insufficient to support the application of section 25850, subdivision (c)(3). Williams's argument is unpersuasive because the record adequately supports a finding that Williams aided and abetted fellow gang members in the commission of "felonious criminal conduct." (§ 186.22, subd. (a).)

The record indicates that, on the night in question, Davis and Payton were driving a distinctive stolen vehicle, a white 1979 Pontiac Firebird, that was being pursued by a

13

police cruiser with its lights and sirens on. Williams was walking on the sidewalk in the company of Wandick and Smith as the cars went by. He immediately jumped into the middle of the street, said, "fuck the police," and fired several shots at the police vehicle. At the time, Davis and Payton had stolen a car and were engaged in evading the police. Williams shot at the police car that was attempting to pull Davis and Payton over as part of an investigation into the stolen car. Williams was well-acquainted with Payton and Davis as they were all members of the same gang and, until very recently, they had all been at the Elks Lodge, a popular hangout for gang members. [FN 10.] In addition, Williams was walking with Wandick, another member of the same gang. Given the circumstances, a reasonable trier of fact could conclude that Williams acted to aid and abet two of his fellow gang members in the commission of felonious conduct. Accordingly, we reject Williams's contention that the evidence was insufficient to support the jury's finding as to the concerted-action element of the gang-participation offense.

[FN 10.] Officer Otterness testified that, on January 15, 2014, he saw Davis, Payton, and Williams sitting together in a car outside a party that Otterness was dispatched to investigate. Officer Wright testified that, on January 17, 2014, he contacted Williams and Payton as they were walking together in Eastside Crips territory. Officer Vaughan testified that, on January 25, 2014, he observed Williams and Payton talking together in the Elks Lodge parking lot.

### B. Sufficient evidence supports the "primary activities" element of the gang-participation offense and the gang-related enhancements

Williams next argues that his gang-related conviction in count 7, as well as the jury's findings regarding the gang enhancements, "should be reversed" because there is insufficient evidence to prove that the East Side Crips are a criminal street gang as defined in section 186.22, subdivision (f). More specifically, Williams argues there is insufficient evidence to support the jury's finding that the Eastside Crips has as one of its primary activities the commission of one of the relevant criminal acts enumerated in section 186.22, subdivision (e).

Williams's conviction for being an active gang participant carrying a firearm, along with the gang enhancements, were all premised on the prosecution initially proving that the Eastside Crips qualified as a "criminal street gang" as defined in section 186.22, subdivision (f). (See § 186.22, subds. (a), (b)(1), & (f).) Section 186.22, subdivision (f), defines a "criminal street gang" as a group of three or more persons, "having as one of its primary activities the commission of one or more of [certain] criminal acts enumerated in" section 186.22, subdivision (e). Here, the jury was instructed that, in order for the Eastside Crips to qualify as a criminal street gang, the gang must have "as one or more of its primary activities, the commission of [assault with a deadly weapon], murder, illegal weapons possession," all of which are encompassed by the primary-activities prong of the applicable criminal street gang definition. (See § 186.22, subd. (e)(1), (e)(3), & (e)(33).)

A gang's primary activities may be established either by presenting "evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute" or through "[e]xpert testimony based on an adequate factual foundation ...." (In re Alexander L. (2007) 149 Cal.App.4th 605, 611, 57 Cal. Rptr. 3d 226.) In this case, Officer Malley, the gang expert, testified that the primary activities of the Eastside Crips are "[illegal] [p]ossession of firearms, sales of firearms, shootings, assaults with deadly weapons, murder, witness intimidation, robberies, burglaries, and carjackings, and also possession of stolen property." Malley's expert testimony was largely based on his personal experience in the field gathering gang intelligence, contacting gang members, and investigating gang-related crimes. Malley also testified

about specific crimes committed by members of the Eastside Crips gang, including convictions for the crimes of felon in possession of a firearm, murder, gang participation, and gang member in possession of a firearm. Williams does not challenge the foundation of Officer Malley's testimony, including his experience with and knowledge of the Eastside Crips gang.

Moreover, the circumstances of the crimes charged in the instant case constituted further evidence that assault with a deadly weapon and illegal weapons possession are primary activities of the Eastside Crips criminal street gang. (People v. Sengpadychith (2001) 26 Cal.4th 316, 323, 109 Cal. Rptr. 2d 851, 27 P.3d 739 [both past offenses and circumstances of charged crime have some tendency in reason to prove gang's primary activity].) Here, Williams fired four shots at a police car pursuing Eastside Crips in a stolen car with a weapon he was not permitted to possess in the first place. Williams's conduct in this case, in conjunction with Officer Malley's expert testimony and evidence regarding specific crimes committed by Eastside Crips members, constitutes substantial evidence from which a jury could reasonably conclude that illegal weapons possession, commission of assaults with deadly weapons, and/or murder constitute a primary activity of the gang. (See People v. Duran (2002) 97 Cal.App.4th 1448, 1465, 119 Cal. Rptr. 2d 272; In re Nathaniel C. (1991) 228 Cal.App.3d 990, 1005, 279 Cal. Rptr. 236 [primary-activities element is proper subject of expert opinion]; People v. Gardeley (1996) 14 Cal.4th 605, 616-617, 59 Cal. Rptr. 2d 356, 927 P.2d 713 (Gardeley), disapproved of on other grounds in People v. Sanchez (2016) 63 Cal.4th 665, 204 Cal. Rptr. 3d 102, 374 P.3d 320 (Sanchez) [elements of gang-participation offense and gang enhancement may be proven through documentary evidence, percipient witness testimony, and opinion testimony of experienced investigator].) [FN 11.] Williams's argument that the evidence is insufficient to establish this element because the gang's predominant function is to participate in social activities is unsupported by the record.

> [FN 11.] Sanchez, *supra*, 63 Cal.4th at page 686, footnote 13, disapproved Gardeley, *supra*, 14 Cal.4th 605, to the extent the latter "suggested an expert may properly testify regarding case-specific out-of-court statements without satisfying hearsay rules." In this appeal, Williams does not challenge Malley's testimony on the basis that it violated hearsay rules. Indeed, the issue is forfeited because trial counsel made a reasonable tactical decision not to raise a hearsay objection to Malley's testimony, requesting, on the contrary, that all gang-related evidence in the matter be introduced through the People's gang expert. Defense counsel filed a written motion in limine specifying that the defense "objects to officers other than the gang officer from testifying about gang related issues" because this would be "cumulative and prejudicial." Defense counsel reiterated her position at the motion hearing, arguing, "I think there comes a point where the issue of cumulative evidence and prejudicial impact of testimony starts to outweigh the probative value.... I'm sure Officer Malley will do a fine job establishing the issues that we are talking about." Noting that the gang-related evidence went beyond admissions of gang membership and was relevant to other elements of gang participation as well, the prosecutor expressly sought permission to call multiple officers to testify so as to forestall any hearsay or Crawford objections from the defense. (Crawford v. Washington (2004) 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177.) Defense counsel strongly opposed the prosecutor's proposal to have multiple officers testify: "[The prosecutor] said 13 officers [have been called] to come and [testify] about gang membership or gang association. I'm just floored. It's just absolutely absurd .... [¶] ... [O]ther than the gang officer and maybe one or two other officers, the notion that thirteen people will come and testify just on the gang aspect of this?" Regarding the prosecutor's concern that the defense could potentially raise a hearsay or Crawford objection, defense counsel stated, "I absolutely appreciate [the prosecutor's] deep concern for the defense's right to cross-examination. But let

15

me just be blunt ... I have no interest in cross-examining Officer Malley, well, what did he say? This is not what the case is about. If it was, I would be asking, you know, for these officers so I can cross-examine them. I am not interested in any of that.... [¶] ... And if the Court allows eleven people to testify about his admission, it will so prejudice the case and the facts of this case." Given defense counsel's arguments that having multiple officers testify would prejudice her client and her clarification that "Officer Malley is perfectly competent to testify," the court, while not expressly limiting the number of officers the People could call, restricted the prosecution to presenting evidence of 12 street checks, 6 offense reports, and 4 predicate offenses.

### C. Sufficient evidence supports other elements of the gang-related enhancements

Finally, Williams contends the evidence is insufficient to prove other elements of the gang enhancements under section 186.22, subdivision (b)(1). Section 186.22, subdivision (b)(1), provides that, "any person who is convicted of a felony *committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members*, shall, upon conviction of that felony, [be subject to additional punishment]." (Italics added.) Williams contends there is insufficient evidence to support the jury's true findings as to the elements that his offenses were committed "for the benefit of, at the direction of, or in association with any criminal street gang" and "with the specific intent to promote, further, or assist in any criminal conduct by gang members ...." (§ 186.22, subd. (b)(1).) We reject Williams's contentions.

The language of section 186.22, subdivision (b)(1), encompasses a two-pronged test for proving the gang-related sentencing enhancement. Under this test, first, the underlying felony must be "gang-related" in that it was "committed for the benefit of, at the direction of, or in association with a criminal street gang"; and second, the defendant must have committed the underlying felony "'with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" (People v. Albillar (2010) 51 Cal.4th 47, 60, 64, 119 Cal. Rptr. 3d 415, 244 P.3d 1062.)

The first prong, i.e., the gang-related nature of the underlying felony, can be satisfied by means of expert testimony. (People v. Hernandez (2004) 33 Cal.4th 1040, 1047-1048, 16 Cal. Rptr. 3d 880, 94 P.3d 1080.) "'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement. [Citation.]" (People v. Vang (2011) 52 Cal.4th 1038, 1048, 132 Cal. Rptr. 3d 373, 262 P.3d 581; see also People v. Albillar, *supra*, 51 Cal.4th at p. 63 ["[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of ... a ... criminal street gang' within the meaning of section 186.22"]; People v. Franklin (2016) 248 Cal.App.4th 938, 949, 203 Cal. Rptr. 3d 876.)

The second or "specific intent" prong of the test is generally satisfied with reference to the facts and circumstances surrounding the crime. As courts have noted, "'[i]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense.'" (People v. Rios (2013) 222 Cal.App.4th 542, 567-568, 165 Cal. Rptr. 3d 687, citing People v. Pre (2004) 117 Cal.App.4th 413, 420, 11 Cal. Rptr. 3d 739; People v. Bloom (1989) 48 Cal.3d 1194, 1208, 259 Cal. Rptr. 669, 774 P.2d 698 ["Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction."].)

Initially, we consider the first prong of the test, i.e., whether the underlying felonies (illegal possession of a firearm and assaults on peace officers with a deadly weapon) were gang related. Here, Officer Malley provided expert testimony regarding the methods and means employed by the Eastside Crips to establish and perpetuate the gang's sway over its so-called "territory." Malley testified that, "[t]he Eastside Crips, it is my experience, will either engage in acts of violence with their rivals, consisting of assaults, as well as shootings, which can also lead up to murders. Upon seeing any member of a rival gang either out in a public area, they're expected to openly engage, fight, or shoot them, or if they are found within Eastside Crip territory, they are also expected to engage with them.... [¶] Often ... [in] the Eastside Crips' culture, *the police are also viewed as rivals*. There have been several incidents of officers being either assaulted or shot at or shot within the Bakersfield Police Department by Eastside Crips." (Italics added.) Further, when Malley was asked about the significance of hypothetical conduct mirroring the conduct at issue in this case (i.e., a situation wherein an active Eastside Crips member in that gang's traditional territory steps into the street, utters the words, "Fuck the police," and fires several shots at a police car that is pursuing a stolen vehicle containing other active gang participants), he opined that, under the stated circumstances, the shooter acted "for the benefit of and in association with the Eastside Crips."

Malley explained that such conduct would "benefit[] the Eastside Crips gang as a whole because it bolsters that particular gang's reputation within the community as being one of a group of ruthless, violent people who will do whatever they want and who are not afraid of law enforcement, as well as regular citizens." He further testified that such conduct "also benefits the entire gang because it elevates the [gang's] status and it establishes fear" in the community, which, in turn, gives the gang "power over average citizens and over the police." Given this record, the jury's true findings as to the first prong of the test, i.e., that Williams committed the felonies at issue for the benefit of or in association with a criminal street gang, are supported by substantial evidence.

Regarding the second prong of the test, the facts and circumstances surrounding the incident reflect that Williams committed the underlying felonies (i.e., illegal possession of a firearm and assaults on peace officers with a deadly weapon) "with the specific intent to promote, further, or assist in any criminal conduct by gang members ...." (§ 186.22, subd. (b)(1).) Williams had been fraternizing with Eastside Crips members and associates at the Elks Lodge, a popular and established gang hangout within the gang's territory. Williams was illegally in possession of a loaded firearm, which he fired at a patrol vehicle as it pursued a stolen car carrying two other gang members, Davis and Payton, both of whom were known to Williams. The stolen car was a 1979 Pontiac Firebird, a distinctive car; it was parked at the Elks Lodge until closing time, indicating that Davis and Payton left the Elks Lodge at approximately the same time as Williams did. Further, at the time he shot at the police car, Williams was in Eastside Crips territory, in the company of another Eastside Crips gang member, Wandick, and a self-identified associate of the gang, Smith. Finally, as the People persuasively argue, Williams's "own conduct that night provided the best evidence of his intent. Specifically, after the stolen car and the marked police car went by, [Williams] said, 'Fuck the police,' ran into the middle of the street, and fired four shots at the back of the police car." In sum, the jury's true findings as to the second prong of the gang enhancement, i.e., that in committing the underlying felonies, Williams acted with the specific intent to promote, further, or assist in any criminal conduct by gang members, is supported by substantial evidence.

Williams's reliance on <u>People v. Franklin</u>, *supra*, 248 Cal.App.4th 938, is misplaced. In <u>Franklin</u>, the court stated, "when it came to proving [Franklin] committed the false imprisonment and criminal threats offenses 'for the benefit of, at the direction of, or in association with'" the Jim Town gang, and "'with the specific intent to promote, further,

or assist in any criminal conduct by gang members' [citation], the expert's testimony fell well short of providing substantial evidence to support true findings on the gang allegations." (Id. at p. 949.) However, the facts in Franklin are clearly distinguishable from those of the instant case. For one thing, in Franklin, the People's gang expert mistakenly stated that the pertinent crimes were committed in Jim Town territory when they were not; rather they were committed in non-gang areas and the territory of other gangs. (Id. at p. 950.) Furthermore, while the record showed that Franklin acted with other gang members, there was no showing that he committed the crimes in association with members of his own gang, Jim Town. (Ibid.) Finally, Franklin's crimes were committed against his "on and off" girlfriend because she planned an out-of-town trip with a friend to serve drinks at a bachelor party, suggesting that Franklin was acting on his own behalf rather than acting to further the criminal agendas of the Jim Town gang and its members. [FN 12.] (Id. at pp. 942-943.)

> [FN 12.] Williams makes two residual arguments. He argues, "[t]he other counts of conviction should be reversed unless it can be shown beyond a reasonable doubt that permitting the prosecutor to present inflammatory, insufficient evidence on the gang crime and gang enhancements did not influence the jurors' determination of the remaining charges." This argument fails in light of our determination that sufficient evidence supported the gang-participation offense and the gang-related sentencing enhancements. Finally, Williams raises a claim of cumulative error. However, since we have found no error in the proceedings, Williams's cumulative-error claim necessarily fails as well. (People v. Abilez (2007) 41 Cal.4th 472, 523, 61 Cal. Rptr. 3d 526, 161 P.3d 58.)

Williams, 2016 Cal. App. Unpub. LEXIS 7040, at *18-35.

*a.      Legal Standard*

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters

v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

> b.    *Analysis*

Petitioner fails to make a showing that the state court rejection of his claim was contrary to or an unreasonable application of Supreme Court authority, or was an unreasonable determination of the facts. Petitioner merely disagrees with the outcome. However, the Court must assume that the jury resolved any conflicting facts in favor of the prosecution. Jackson, 443 U.S. at 326. The reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). As Respondent notes, Petitioner has "ignored 'the only question that matters under § 2254(d)(1),'" which is whether the state court decision is contrary to, or an unreasonable application of, the Jackson standard. Richter, 562 U.S. at 102 (quoting Lockyer v. Andrade, 538 U.S. 63, 71 (2003)).

Because the state court applied the correct standard of review, the only question for this Court is whether that application was objectively unreasonable. The Court concludes that it was not. The

Petitioner challenges the sufficiency of the evidence as to the concerted action element incorporated in section 25850, subdivision (c)(3). The state court reasonably rejected this argument. The state court reviewed the record setting out the facts demonstrating the interaction between the Petitioner and his fellow gang members on the night in question, in which Petitioner fired at a patrol vehicle as it pursued a stolen car carrying two other gang members. The state court noted that Petitioner was well acquainted with these fellow gang members in relation to the stolen car as they were all members of the same gang and had all been at the Elks Lodge, a popular hangout for gang members, just before the incident. The state court also noted that Petitioner was walking with another member of the same gang at the time of the incident at issue. From these facts, the state court reasonably determined that a jury could have found that Petitioner acted to aid and abet two of his fellow gang members in the commission of felonious conduct.

The Petitioner also argues there is insufficient evidence to support the jury's finding that the Eastside Crips has as one of its primary activities the commission of one of the relevant criminal acts enumerated in section 186.22, subdivision (e). However, the state court reasonably rejected this argument. The state court stated that Petitioner fired four shots at a police car pursuing Eastside Crips members in a stolen car with a weapon he was not permitted to possess in the first place. The state court concluded that Petitioner's conduct in this case, in conjunction with Officer Malley's expert testimony and evidence regarding specific crimes committed by Eastside Crips members, constitutes substantial evidence from which a jury could reasonably conclude that illegal weapons possession, commission of assaults with deadly weapons, and/or murder constitute a primary activity of the gang. The Court finds that the state court determination was objectively reasonable.

Additionally, the Court finds as reasonable the Fifth DCA's conclusion that the jury's findings regarding other elements of the gang related enhancements were supported by substantial evidence; specifically, that Petitioner committed the felonies at issue for the benefit of or in association with a criminal street gang and that in committing the underlying felonies, Petitioner acted with the specific intent to promote, further or assist in criminal conduct by gang members. In light of the above, Petitioner fails to show that no rational trier of fact would have agreed with the jury's determination. He fails to demonstrate that the state court rejection of his claims was contrary to, or an unreasonable

application of, the <u>Jackson</u> standard. The claims should be denied.

**IV.     RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within twenty-one days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **August 19, 2019**                              **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE